TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING








NO. 03-98-00340-CV







Texas Natural Resource Conservation Commission; Texas Farm, Inc.; and Dean Paul


d/b/a Paul Farms/Accord Agriculture, Inc.
, Appellants



v.



Accord Agriculture, Inc./Texas Natural Resource Conservation Commission;


Texas Farm, Inc.; and Dean Paul d/b/a Paul Farms
, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 96-00159, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING








 We withdraw our original opinion and judgment issued June 17, 1999, and
substitute this one in its place.

 Accord Agriculture, Inc. ("Accord") sued in district court for a declaratory
judgment that rules adopted by the Texas Natural Resource Conservation Commission ("TNRCC"
or the "Commission") to regulate concentrated animal feeding operations ("CAFOs") (1) are invalid
because the Commission: (1) failed to satisfy the reasoned justification requirement of the
Administrative Procedure Act ("APA") (2) and (2) lacked statutory authority to promulgate the rules. 
Accord also alleged that the CAFO rules as applied result in a taking in violation of article I,
section 17 of the Texas Constitution and sought a declaratory judgment that the Right to Farm
Act (3) is unconstitutional. 

 The Commission (4) filed a plea to the jurisdiction alleging that Accord did not have
standing to bring either its takings claim or its challenge to the Right to Farm Act. The district
court granted the Commission's plea and struck both claims. The parties filed cross-motions for
summary judgment on the remaining claims. The district court declared the CAFO rules invalid
for failure of the Commission to state a reasoned justification but did not reach the issue of
whether the Commission had statutory authority to promulgate the rules.

 The Commission appeals the judgment. Accord also appeals, challenging (1) the
order granting the Commission's plea to the jurisdiction and (2) the district court's failure to
address the issue of statutory authority. We affirm the district court judgment. 


THE CONTROVERSY

 An animal feeding operation is defined in the Texas Administrative Code as


A lot or facility . . . where animals have been, are, or will be stabled or confined
and fed or maintained for a total of 45 days or more in any 12-month period, and
the animal confinement areas do not sustain crops, vegetation, forage growth, or
post harvest residues in the normal growing season.



30 Tex. Admin. Code § 321.182 (1998). A CAFO is an animal feeding operation that the
Commission has designated as a "significant contributor of pollution," or any animal feeding
operation that confines animals in excess of the numbers specified in the Administrative Code. 
Id.

 Before the Commission adopted the rules at issue, CAFOs were required to obtain
permits authorizing the discharge of wastewater and the emission of air contaminants. See Tex.
Water Code Ann. § 26.121(a) (West Supp. 1999); Tex. Health & Safety Code Ann. § 382.0518
(West Supp. 1999). The permitting procedures are set forth in rules adopted by the Commission
under the Water Code and the Health and Safety Code. See 30 Tex. Admin. Code §§ 116.110-.175; 321.31-.46 (1998). The rules require CAFOs to satisfy detailed procedural and technical
requirements in order to obtain the requisite permits. 

 For example, to obtain an air contaminant emission permit, an applicant must
demonstrate that emissions from the proposed CAFO will comply with the intent of the Texas
Clean Air Act; that the facility will have provisions for measuring the emission of significant air
contaminants; that the facility will utilize the best available control technology ("BACT"); (5) and
that emissions from the facility will meet the requirements of applicable federal law. See id.
§§ 116.110, .111. Furthermore, an applicant must publish notice of intent to construct the facility
in a newspaper in general circulation in the municipality where the facility will be located and
provide a public comment period. Id. § 116.130, .132. Persons affected by the emission of air
contaminants from the facility are entitled to a public hearing. Id. § 116.132; see also Tex.
Health & Safety Code Ann. § 382.056 (West Supp. 1999).

 To obtain a wastewater discharge permit, an applicant must demonstrate that the
proposed CAFO will not discharge any wastewater, except for overflows that result from rainfalls
greater than the 25-year, 24-hour maximum rainfall event. See 30 Tex. Admin. Code §§ 321.31,
.32 (1998) (defining 25-year, 24-hour rainfall event as "[t]he maximum rainfall event with a
probable recurrence interval of once in 25-years, with a duration of 24 hours, as defined by the
National Weather Service in Technical Paper Number 40, Rainfall Frequency Atlas of the United
States, May 1961, and subsequent amendments, or equivalent information developed therefrom."). 
Permit applicants must also demonstrate compliance with Commission rules concerning surface
water protection (§ 321.35), ground water protection (§ 321.36), waste disposal methods
(§§ 321.37, .38), and pesticide use (§ 321.39). Persons affected by wastewater discharges from
the proposed CAFO are entitled to request a hearing in accordance with Commission rules. See
Tex. Water Code Ann. § 26.028 (West 1988).

 In 1995, the Commission adopted the CAFO rules to simplify the CAFO
authorization procedure. (6) See 30 Tex. Admin. Code §§ 321.34, .181-.198 (1998). CAFOs that
comply with the requirements of the new rules do not have to apply for or secure individual
wastewater discharge and air contaminant emission permits; instead, the Commission may issue
a unified "permit-by-rule" to qualifying CAFOs. See id. § 321.183(b), (i). By eliminating the
need for CAFOs to obtain two permits, the Commission also effectively eliminated the right of
a party adversely affected by CAFO-generated pollution to request a contested case hearing.

 Pursuant to the new "permit-by-rule" procedure, Texas Farm and Paul Farms were
authorized to operate a total of six CAFOs in the upper Texas panhandle. Accord, a non-profit
Texas corporation formed to protect property owners in the panhandle from CAFO-generated
pollution, challenged the CAFO rules in district court. Accord's primary contention was that the
Commission's order adopting the CAFO rules failed to provide a reasoned justification. The trial
court agreed and invalidated the rules. 

 The Commission appeals the district court's declaration that the CAFO rules are
invalid, arguing that the order adopting the rules substantially complies with the rulemaking
requirements of the APA. Accord also appeals, contending that the district court erred by striking
Accord's takings claim and its challenge to the Right to Farm Act for want of jurisdiction and by
refusing to address whether the Commission had statutory authority to promulgate the rules.


DISCUSSION AND HOLDINGS

Plea to the Jurisdiction

 In its amended original petition, Accord requested a jury trial to determine whether
the CAFO rules as applied amount to a taking in violation of article I, section 17 of the Texas
Constitution. Accord also sought a declaratory judgment that the Right to Farm Act is
unconstitutional. The Commission filed a plea to the jurisdiction challenging Accord's standing
to assert these claims. The district court granted the Commission's plea. Accord contends that
the district court erred because the pleadings demonstrate that Accord has standing to pursue the
claims on behalf of its members. 

 A plea to the jurisdiction contests the court's authority to determine the subject
matter of the cause of action. See Dolenz v. Texas State Bd. of Medical Examiners, 899 S.W.2d
809, 811 (Tex. App.--Austin 1995, no writ). Taking the plaintiff's allegations as true, the plea
raises incurable defects in jurisdiction that are shown on the face of the plaintiff's pleadings. Id.;
see also Firemen's Ins. Co. v. Board of Regents, 909 S.W.2d 540, 542 (Tex. App.--Austin 1995,
writ denied). When reviewing a trial court order granting a plea to the jurisdiction, we must look
to the pleader's intent and construe the pleadings in the plaintiff's favor. See Texas Ass'n of
Business v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). 

 For an organization such as Accord to maintain an action on behalf of its members,
the pleadings must show the following: (1) Accord members would otherwise have the right to
sue in their own right; (2) the interests Accord seeks to protect are germane to its organizational
purpose; and (3) neither the claim asserted nor the relief requested requires the participation of
individual members in the action. See id. at 446-48.

 The Commission does not challenge Accord's standing with respect to the first two
prongs; instead, the Commission argues that Accord's takings claim and its challenge to the Right
to Farm Act were properly struck because both require the participation of individual members. 
We will first analyze Accord's takings claim. 

 Accord's amended original petition alleged that its members are "mostly private
property owners in the upper Texas panhandle," an area in which CAFOs authorized to operate
by the Commission allegedly present unreasonable risks to air and water resources and thus
interfere with "the quality of life and with the use and enjoyment of the properties of Accord
members." Accord requested that "[t]he Court grant Accord a jury trial on the issue of whether
the new CAFO rules, as applied in this case, result in a taking or damaging of the properties of
some of the members of Accord without their consent or adequate compensation, in violation of
Tex. Const. art. I § 17." Article I, section 17 of the Texas Constitution provides, in pertinent
part, that no "person's property shall be taken, damaged or destroyed for or applied to public use
without adequate compensation being made . . . ." 

 Takings can be classified as either physical or regulatory. See Mayhew v. Town
of Sunnyvale, 964 S.W.2d 922, 933 (Tex. 1998). Physical takings occur when the government
authorizes an unwarranted physical occupation of an individual's property. Id. (citing Yee v. City
of Escondido, 503 U.S. 519, 522 (1992)). Because Accord did not allege any unwarranted
physical occupation of the property of its members by the CAFOs, the pleadings must be
construed to allege a regulatory taking.

 A compensable regulatory taking occurs when a governmental agency imposes
restrictions that either deny a landowner all economically viable use of his property or
unreasonably interfere with a landowner's rights to use and enjoy his property. Id. at 935 (citing
Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015-19 & n.8 (1992)). Determining
whether all economically viable use of a property has been denied entails an analysis of whether
value remains in the property after the government action. Id. Determining whether the
government has unreasonably interfered with a landowner's rights to use and enjoy his property
requires a consideration of two factors: (1) the economic impact of the regulation and (2) the
extent to which the regulation interferes with distinct investment-backed expectations. Id.

 The first factor compares the value that has been taken from the property with the
value that remains in the property. Id. (citing Keystone Bituminous Coal Ass'n v. DeBenedictis,
480 U.S. 470, 497 (1987)). The second factor is the investment-backed expectation of the
landowner. The existing and permitted uses of the property constitute the "primary expectation"
of the landowner that is affected by regulation. Id. (citing Penn Cent. Transp. Co. v. New York
City, 438 U.S. 104, 136 (1978)); see also Lucas, 505 U.S. at 1017 n.7 (owner's reasonable
expectations shaped by uses permitted by state law).

 In Texas Workers' Compensation Commission v. Garcia, 862 S.W.2d 61 (Tex.
App.--San Antonio), rev'd on other grounds, 893 S.W.2d 504 (Tex. 1995), the Fourth Court of
Appeals held that an association of labor unions had standing to bring a suit to declare
unconstitutional the 1989 Workers' Compensation Act on behalf of its members. In explaining
that there was no reason to require the participation of the individual members of the unions, the
court stated, "Individual participation is required when there are conflicts of interest within the
organization, when there is need for specific factual information to illuminate the basis for the
decision, or when there are damage determinations to be made." Garcia, 862 S.W.2d at 71
(citing 13 Charles A. Wright, Arthur R. Miller & Edward Cooper, Federal Practice and
Procedure § 3531.9 (1984) (emphasis added)). 

 Accord argues that in its amended petition, it requested a declaration that the
Commission's authorization of CAFOs under the new rules amounts to an illegal taking. We are
not convinced. No request for prospective relief with regard to Accord's takings claim appears
in the pleadings. While Accord does request a declaratory judgment that the CAFO rules are
invalid and that the Right to Farm Act is unconstitutional, the relief it seeks with regard to its
takings claim is adequate compensation as determined by a jury. Because a jury trial would
involve individualized determinations of damages, Accord does not have standing to bring a
takings claim on behalf of its members. We affirm the trial court order granting the
Commission's plea in that respect.

 We will next analyze whether Accord's challenge to the Right to Farm Act was
properly dismissed by the trial court. The Right to Farm Act provides: 


No nuisance action may be brought against an agricultural operation that has
lawfully been in operation for one year or more prior to the date on which the
action is brought, if the conditions or circumstances complained of as constituting
the basis for the nuisance action have existed substantially unchanged since the
established date of operation. 

Tex. Agric. Code Ann. § 251.004(a) (West 1982). Accord alleged in its amended petition that
"CAFOs present unreasonable risks to the air and water resources of the region, thereby
interfering with the quality of life and with the use and enjoyment of the properties of Accord
members." Instead of seeking injunctive relief or monetary damages based on this alleged
nuisance, Accord attacked the constitutionality of the Right to Farm Act. Accord alleged that
because the Act prohibits nuisance actions against agricultural operations that have been lawfully
in operation for one year or more, the Act "unconstitutionally shields CAFOs permitted by
TNRCC from suit for nuisance and recovery of damage by Accord members." 

 To have standing to challenge a statute, a plaintiff must first suffer some actual or
threatened restriction under that statute. See Garcia, 893 S.W.2d at 518. Second, the plaintiff
must contend that the statute unconstitutionally restricts the plaintiff's rights, not somebody else's. 
Id. (citing Broadrick v. Oklahoma, 413 U.S. 601, 610 (1973)). Accord's challenge to the
constitutionality of the Right to Farm Act was premature. Accord failed to allege that the CAFOs
had been in operation for a year or more prior to the date on which suit was filed. Indeed,
Accord has admitted that at the time it filed suit the CAFOs had not been in operation for more
than a year. (7) Thus, the Right to Farm Act did not foreclose Accord's ability to pursue a nuisance
claim against the CAFOs. 

 Because the members of Accord had not suffered any injury due to the challenged
restriction at the time Accord filed suit, no real controversy existed between the parties with
regard to the Act. See Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 662
(Tex. 1996); Garcia, 893 S.W.2d at 519. Any ruling by the trial court regarding the
constitutionality of the Act would have been advisory. Because Accord lacked standing to
challenge the Right to Farm Act, the portion of the district court order striking Accord's
constitutional challenge is affirmed. 


Accord's Procedural Challenge to the CAFO Rules

 One of the stated purposes of the APA is to provide for public participation in the
rulemaking process. See Tex. Gov't Code Ann. § 2001.001 (West 1999). Accordingly, sections
2001.021-.034 establish a system of informal or "notice-and-comment" rulemaking. Id.
§§ 2001.021-.034; see also Unified Loans, Inc. v. Pettijohn, 955 S.W.2d 649, 651 (Tex.
App.--Austin 1997, no writ). In order to adopt a rule, an agency must provide: (1) public notice;
(2) an opportunity for and full consideration of comments; and (3) a reasoned justification for the
rule enacted. See Tex. Gov't Code Ann. §§ 2001.023, .029, .033 (West 1999); see also McCarty
v. Texas Parks & Wildlife Dep't, 919 S.W.2d 853, 854 (Tex. App.--Austin 1996, no writ).

 The parties do not join issue on whether the Commission satisfied the requirements
that it provide public notice and an opportunity for comments before adopting the CAFO rules. (8) 
The controversy instead concerns whether the Commission provided a reasoned justification for
the CAFO rules. To satisfy the reasoned justification requirement, an agency's order adopting
a rule must explain how and why the agency reached the conclusion it did. See National Ass'n
of Indep. Insurers v. Texas Dep't of Ins., 925 S.W.2d 667, 669 (Tex. 1996) ("NAII"). A
reasoned justification must include: (1) a summary of comments the agency received from
interested parties; (2) a restatement of the factual basis for the rule; and (3) the reasons why the
agency disagrees with a party's comments. See Tex. Gov't Code Ann. § 2001.033(1) (West
1999); see also Texas Hosp. Ass'n v. Texas Workers' Compensation Comm'n, 911 S.W.2d 884,
886 (Tex. App.--Austin 1995, writ denied). 

 In addition to the three criteria, the agency must provide a reasoned justification
for the rule as a whole. See Texas Hosp. Ass'n, 911 S.W.2d at 886 (citing Railroad Comm'n v.
Arco Oil & Gas Co., 876 S.W.2d 473, 492 (Tex. App.--Austin 1994, writ denied), and Chrysler
Motors Corp. v. Texas Motor Vehicle Comm'n, 846 S.W.2d 139, 143 (Tex. App.--Austin 1993,
no writ)). By requiring an agency to expressly state a reasoned justification for a rule, the
legislature apparently intended to bring the decision-making process into the open. See Arco, 876
S.W.2d at 480; see also NAII, 925 S.W.2d at 669 ("Requiring an agency to demonstrate a rational
connection between the facts before it and the agency's rules promotes public accountability and
facilitates judicial review.").

 An agency rule not adopted in substantial compliance with the rulemaking
provisions of the APA section is invalid. See Tex. Gov't Code Ann. § 2001.035(a) (West 1999). 
The reasoned justification requirement imposed by section 2001.033 confines a reviewing court's
inquiry to the face of the order finally adopting the rule. See Arco, 876 S.W.2d at 480 (citing
Ron L. Beal, The Scope of Judicial Review of Agency Rulemaking: The Interrelationship of
Legislating and Rulemaking in Texas, 39 Baylor L. Rev. 597, 690 (1987)); see also Methodist
Hosps. v. Industrial Accident Bd., 798 S.W.2d 651, 659 (Tex. App.--Austin 1990, writ dism'd
w.o.j.). In Methodist Hospitals, this Court held that 


the question of substantial compliance . . . is a question of law to be determined
solely from the face of the [adopting] order . . . . So much is necessarily implied
by the statute itself. Substantial compliance is not a question of fact, to be
determined by evidence adduced subsequently in a reviewing court, concerning
whether the agency had unstated factual bases for its rule or unstated reasons for
disagreeing with party submissions and proposals, and what these were in fact, or
whether any stated factual bases or reasons for disagreeing were in fact considered
and accepted by the agency on sufficient evidence. 



798 S.W.2d at 659 (emphasis in original).

 Therefore, to substantially comply with the reasoned justification requirement, the
four corners of the agency's final notice must present the agency's justification in a "relatively
clear, precise, and logical fashion." (9) Arco, 876 S.W.2d at 492. Furthermore, an agency's order
must accomplish the legislative objectives underlying the reasoned justification requirement and
come fairly within the character and scope of each of the statute's requirements in specific and
unambiguous terms. See NAII, 925 S.W.2d at 669 (citing Arco, 876 S.W.2d at 491, and
Methodist Hosps., 798 S.W.2d at 654). The essential legislative objective of the reasoned
justification requirement is:

to give notice of the factual, policy, and legal basis for the rule, as adopted or
construed by the agency, in light of all the evidence gathered by the agency and
submitted by interested parties during the comment period. This overall objective
can be broken down into two fundamental goals of the reasoned justification
requirement: (1) to ensure the agency fully considered the comments submitted
and (2) to provide the factual basis and rationality of the rule as determined by the
agency.



Arco, 876 S.W.2d at 491. 

 We review a challenge to the reasoned justification requirement using an "arbitrary
and capricious" standard, with no presumption that facts exist to support the agency's order. See
Texas Hosp. Ass'n, 911 S.W.2d at 887; see also Arco, 876 S.W.2d at 490-91. In applying an
arbitrary and capricious test to agency rulemaking, we examine whether the agency's explanation
of the facts and policy concerns it relied on when it adopted the rule demonstrates that the agency
considered all the factors relevant to the objectives of the agency's delegated rulemaking authority
and engaged in reasoned decision making. See Arco, 876 S.W.2d at 491. An agency acts
arbitrarily if in making a decision it commits one of the following errors: (1) omits from its
consideration a factor that the legislature intended the agency to consider in the circumstances;
(2) includes in its consideration an irrelevant factor; or (3) reaches a completely unreasonable
result after weighing only relevant factors. See Statewide Convoy Transps. Inc. v. Railroad
Comm'n, 753 S.W.2d 800, 804 (Tex. App.--Austin 1988, no writ); see also Bullock v. Hewlett-Packard Co., 628 S.W.2d 754, 756 (Tex. 1982) (rule is arbitrary and capricious when it lacks
a legitimate reason to support it).

 The Texas Supreme Court applied the foregoing standards in National Ass'n of
Independent Insurers v. Texas Department of Insurance, 925 S.W.2d 667 (Tex. 1996), to
determine the validity of rules adopted by the State Board of Insurance. The rules prohibited
insurers from (1) refusing to sell insurance to prospective purchasers because they have had an
insurance policy canceled by another insurer, or because they have been insured by a county
mutual or surplus lines insurance company, and (2) conditioning the sale of automobile insurance
on the purchase of another policy or denying an application because the applicant owns only one
car. See NAII, 925 S.W.2d at 670.

 The Board justified the first rule by stating that a refusal to sell insurance based in
whole or in part on the fact that another insurer has declined to write, canceled, or nonrenewed
a policy is an anti-competitive practice that results in "the blacklisting of some consumers from
the insurance market." Id. The Board justified the second rule as an attempt to ensure the
availability and affordability of car insurance. Id.

 The court held that the Board failed to provide reasoned justifications for both rules
and rendered judgment that the rules were invalid. The court held that the Board failed to explain
why the consideration of a previous denial, along with other permissible factors, was unfair or
anti-competitive. Id. Likewise, the court held that the Board failed to explain why the practices
prohibited by the second rule were unfairly discriminatory. The court stated, "Without an
explanation by the Board of its reasoning, we cannot know, and just as importantly, the public
cannot know, why the Board reached the conclusion that it did." Id.

 In three cases decided before NAII, this Court employed a similar analysis of
adopting orders. In Methodist Hospitals v. Industrial Accident Board, a challenge was made to
the validity of a rule adopted by the agency to impose limitations on the amount a hospital could
charge workers' compensation patients. See Methodist Hosps., 798 S.W.2d at 653. We held that
the agency had failed to articulate the factual basis of the rule and the reasons it disagreed with
the submissions and proposals it received. Id. at 659. This Court made clear that merely
"considering" and "responding" to the comments of interested parties did not satisfy the
requirement that the agency provide the reasons why it disagreed with party submissions. Id. at
658-59.

 In Railroad Commission of Texas v. Arco Oil & Gas Co., we invalidated an oil and
gas rule adopted by the Railroad Commission to prevent waste. See Arco, 876 S.W.2d at 494. 
Despite a discussion in the adopting order of the history of the oil field, administrative hearings
affirming the waste regulations of the field, and the likelihood of increased waste if production
levels were increased, this Court concluded that the Railroad Commission failed to restate the
rule's factual basis. Id. at 492-94. We pointed out that the mere fact that production levels
adopted by the rule had been used for many years did not provide a reasoned justification for their
adoption. Id. at 493. We then dismissed the fear of increased waste with increased production
as merely raising that possibility with no supporting facts, concluding that, "When the wheat of
the Commission's order is separated from its chaff, virtually all that remains is the general
conclusion that the Commission believes that [the rule] is necessary to prevent waste." Id. at 494. 

 Finally, in Texas Hospital Ass'n v. Texas Workers' Compensation Commission, this
Court invalidated a rule promulgated by the Workers' Compensation Commission to reimburse
health-care providers for the treatment of injured workers at a fixed per-diem rate. Texas Hosp.
Ass'n, 911 S.W.2d at 886. Although the adopting order summarized the legislative mandate,
stated what action the Commission took, and described the data the Commission relied upon in
formulating the rule, this Court held that the Commission was required to do more; it had to
explain why it took action and why the rule was an appropriate response to the available data. Id.
at 887. An order cannot be phrased in conclusory terms; it must explain the reasoning behind the
adoption of a new rule. Id. at 888.

 As set out in the Water Code and the Health and Safety Code, the Commission's
statutory mandate is to protect the quality of water and air in the state. See Tex. Water Code
Ann. § 5.120 (West Supp. 1999); Tex. Health & Safety Code Ann. § 382.011 (West Supp. 1999). 
The legislature has delegated to the Commission the power to adopt rules pursuant to this
mandate. In particular, the Commission may regulate wastewater discharges and air contaminant
emissions by rule if certain statutory prerequisites are met. See supra note 6. Thus, within the
four corners of the Commission's order adopting the CAFO rules, the reviewing court must be
able to determine that the Commission considered and found facts to support its determination that
CAFOs may be regulated by rule rather than by individual permits.

 To determine whether the Commission's order adopting the CAFO rules satisfies
the reasoned justification requirement of the APA, we will consider each of the three substantive
elements as set out in the statute. See Tex. Gov't Code Ann. § 2001.033 (West 1999); see also
Methodist Hosps., 798 S.W.2d at 659. The first element is "a summary of comments received
from parties interested in the rule that shows the names of interested groups or associations
offering comment on the rule and whether they were for or against its adoption." See Tex. Gov't
Code Ann. § 2001.033 (West 1999). The Commission's order sets out expressly and at some
length the information required by the first element. Accord does not complain that the summary
of comments is absent from the order; consequently, we need not consider this item further.

 The crux of the parties' dispute concerns the second and third elements of the
reasoned justification requirement: "a restatement of the rule's factual basis" and "the reasons
why the agency disagrees with party submissions and proposals." Id. Accord contends that the
adopting order fails to explain why the Commission reached its conclusions concerning the
authorization of CAFOs. In particular, Accord argues that the order fails to demonstrate an
adequate consideration of the statutory prerequisites for the issuance of permits-by-rule. Accord
contends that the statements of justification in the adopting order are merely conclusory and do
not substantially comply with the reasoned justification requirement of the APA. 

 The Commission claims that several portions of the order adopting the CAFO rules
satisfy the reasoned justification requirement. First, the Commission points to the following: 


The purpose of the rules is to streamline and consolidate the existing authorization
procedures for new CAFOs under the Texas Water Code, Chapter 26 and the
Texas Clean Air Act, while still maintaining air and water quality. Such
streamlining shall be accomplished by: allowing all new and certain existing
permitted CAFOs to be authorized by rule if certain conditions are met; making
consistent state and federal requirements; avoiding the duplication of actions of the
commission and the State Soil and Water Conservation Board; shortening the
application review period and making more explicit performance standards and best
management practices to be utilized and/or to be met; providing for both air and
water quality issues to be addressed in a simultaneous and comprehensive manner;
and focusing the agency's limited resources on those areas of the state being
designated under these rules as Dairy Outreach Program Areas.



See 20 Tex. Reg. 4719 (1995). The Commission contends that this language precisely states the
reasons why the new rules were adopted, namely that the existing permitting process for CAFOs
needed streamlining and consolidation, and lists factual "findings" on which the Commission
based its conclusion. 

 This language fails to provide either a restatement of the factual basis for the rules
or the reasons why the Commission adopted the rules. The first sentence is merely conclusory;
it does not describe how the Commission arrived at the conclusion that the existing permitting
process was inefficient. Such a statement provides no justification at all, much less a reasoned
one. See Texas Hosp. Ass'n, 911 S.W.2d at 887. The second sentence describes the features of
the new authorization process without explaining either the data or the reasoning that compels the
conclusion that regulating CAFOs by rule will improve administrative efficiency while
maintaining air and water quality. The APA requires the adopting order to contain at least a
modicum of analysis; otherwise, the agency does nothing more than provide a rationale with no
substance. Id.; see also Arco, 876 S.W.2d at 493.

 Next, the Commission argues that two paragraphs preceding the newly adopted
rules refer to general and specific rulemaking provisions of the Water Code and the Health and
Safety Code and thus demonstrate the Commission's rationale for adopting the CAFO rules. The
paragraph preceding section 321.34 states: 


The new section is adopted under the Texas Water Code, §§ 5.103, 5.105, 5.120,
26.028(c), and 26.040, which provides the Commission with the authority to
promulgate rules as necessary to carry out its powers and duties under the Texas
Water Code and other laws of the state, and to establish and approve all general
policies of the Commission.



The preamble to sections 321.181-.198 states:



The new sections are adopted under the Texas Health and Safety Code, § 382.017,
which provides the Commission with the authority to adopt rules consistent with
the policies and purposes of the Texas Clean Air Act, and Texas Water Code,
§§ 5.103, 5.105, 5.120, 26.028(c), and 26.040, which provides the Commission
with the authority to promulgate rules as necessary to carry out its powers and
duties under the Texas Water Code and other laws of the state, and to establish and
approve all general policies of the Commission.



 With the exception of sections 26.028(c) and 26.040 of the Water Code, the statutes
cited by these two paragraphs authorize the Commission in general terms to adopt rules. 
Therefore, even if these provisions help support the Commission's decision to use the rulemaking
process for the purpose of regulating CAFOs, they do not shed any light on the rationale behind
such a decision. See Arco, 876 S.W.2d at 493; Texas Hosp. Ass'n, 911 S.W.2d at 887 (portion
of adopting order that merely summarizes legislative mandate does not satisfy either reasoned
justification or factual basis requirement).

 As for the more specific statutory provisions, section 26.028(c) concerns the
renewal of CAFO permits issued between July 1, 1974 and December 31, 1977, and in no way
provides a reasoned justification for the adoption of the CAFO rules. Section 26.040 authorizes
the Commission to regulate wastewater discharges by rule in two situations: (1) when the
Commission determines that the "quality of water in an area is adversely affected or threatened
by the combined effects of several relatively small-quantity discharges of wastes being made for
which it is not practical to issue individual permits," or (2) when "the general nature of a
particular type of activity which produces a waste discharge is such that requiring individual
permits is unnecessarily burdensome both to the waste discharger and the commission." Tex.
Water Code Ann. § 26.040 (West 1988). 


 The order does not provide a reasoned justification for the application of section
26.040. The Commission fails to analyze whether CAFO discharges are small in quantity relative
to other types of discharges or to address why it is impractical to issue individual permits for
CAFOs. Furthermore, the order neglects to explain why requiring individual permits is
unnecessarily burdensome or how a scheme of permits-by-rule would reduce that burden. While
the reasoned justification requirement does not demand that an agency provide detailed findings
of fact and conclusions of law, see Chrysler Motors Corp., 846 S.W.2d at 143, an agency must
provide more than a general reference to statutory authority. (10) Arco, 876 S.W.2d at 494; see also
Beal, 45 Baylor L. Rev. at 33 ("Mere reiteration of the statutory language does not ensure that
the agency relied on and informed interested parties of the underlying factual basis for the rule,
according to the legislative objective."). 

 Finally, the Commission argues that its responses to arguments made by interested
parties fully explain the reasons why it concluded that the existing permitting process was
inadequate. For example, one commenter stated that there is no evidence to suggest that the
Commission has the authority pursuant to the Water Code to regulate CAFOs by rule. See 20
Tex. Reg. 4721 (1995). In response, the Commission first restates the statutory language, then
states that the new rules "prohibit the discharge of wastewater except in the cases of extraordinary
stormwater events"; thus, "to require individual [wastewater discharge] permits for these
numerous no-discharge facilities would be unreasonably burdensome to both the agency and the
regulated community." (11) The Commission's response to this comment gives a representative
flavor of its responses as a whole. 

 While the Commission does respond to the comments concerning the promulgation
of the CAFO rules, nothing in its order amounts to a reason for the Commission's disagreement
with the submissions or proposals it received. See Methodist Hosps., 798 S.W.2d at 659. Instead
of providing any reasoned justification for its conclusion that the process of individual permitting
is impractical or unduly burdensome, the Commission simply insists that the new rules, by
allowing an applicant to go through a single process to obtain an authorization to operate a CAFO
instead of two separate permitting processes, are more desirable. Without an explanation of how
or why the Commission reached the conclusion it did, such conclusory statements do not secure
the legislative objectives that underlie the reasoned justification requirement. 

 In the absence of a reasoned analysis, we conclude that the order adopting the
CAFO rules does not substantially comply with the rulemaking requirements of the APA. (12) We
affirm the trial court judgment that the CAFO rules are invalid. 


Accord's Substantive Challenge to the CAFO Rules

 Accord contends that the trial court erred by failing to reach Accord's argument
that the Commission lacks statutory authority to regulate CAFOs by rule. In its substantive
challenge to the rules, Accord argues that the Commission cannot justify the regulation of CAFOs
by rule because CAFOs do not fall within the statutory exceptions to the permitting requirements
as a matter of law.

 An agency rule is invalid if the agency had no statutory authority to promulgate it,
it was not promulgated pursuant to proper procedure, or it is unconstitutional. See Arco, 876
S.W.2d at 477 (citing Helle v. Hightower, 735 S.W.2d 650, 654 (Tex. App.--Austin 1987, writ
denied)). Having already affirmed the invalidation of the CAFO rules based on the Commission's
failure to provide a reasoned justification, and finding no support for the proposition that the
consideration of a substantive challenge logically precedes that of a procedural challenge, we
decline to address Accord's statutory authority ground for declaring the rules invalid.


CONCLUSION

 Because the Commission failed to provide a reasoned justification for the CAFO
rules, the district court did not err when it invalidated the rules. We affirm the district court
judgment invalidating the rules and therefore do not reach Accord's statutory authority argument.
We also conclude that because Accord does not have standing to pursue either its takings claim
or its challenge to the Right to Farm Act, the district court properly struck both claims for want
of jurisdiction.



 


 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: September 10, 1999

Do Not Publish
1. See 30 Tex. Admin. Code §§ 321.34, .181-.198 (1998) ("CAFO rules").
2. See Tex. Gov't Code Ann. § 2001.033 (West 1999). 
3. See Tex. Agric. Code Ann. §§ 251.001-.006 (West 1982 & Supp. 1999) (prohibiting
nuisance actions against an agricultural operation that has been in existence lawfully for one year
or more).
4. Texas Farm, Inc. and Dean Paul d/b/a Paul Farms, both authorized by the Commission
to construct and operate CAFOs pursuant to the new rules, intervened in the lawsuit subsequent
to the trial court's ruling on the plea to the jurisdiction.
5. See 30 Tex. Admin. Code § 116.10 (1998) (defining BACT as "Best Available Control
Technology with consideration given to the technical practicability and economic reasonableness
of reducing or eliminating emissions from the facility.").
6. See Tex. Water Code Ann. § 26.040 (West 1988) ("Whenever the commission
determines that the quality of water in an area is adversely affected or threatened by the combined
effects of several relatively small-quantity discharges of wastes being made for which it is not
practical to issue individual permits or that the general nature of a particular type of activity which
produces a waste discharge is such that requiring individual permits is unnecessarily burdensome
both to the waste discharger and the commission, the commission may by rule regulate and set the
requirements and conditions for the discharges of waste.") (emphasis added); see also Tex. Health
& Safety Code Ann. § 382.051(b)(3) (West Supp. 1999) (authorizing the Commission to issue a
"standard permit developed by rule for numerous similar sources subject to Section 382.0518.").
Water Code section 26.040 was amended in 1997, but rules adopted by the Commission as
authorized by that section before the effective date of the amendment remain in effect. See Act
of May 27, 1997, 75th Leg., R.S., ch. 1085, § 2(b), 1997 Tex. Gen. Laws 4178, 4179. 
7. Furthermore, at the time the trial court ruled upon the plea to the jurisdiction, neither
Texas Farm nor Paul Farms had yet intervened in the lawsuit.
8. A public hearing on the proposed rules was held on January 30, 1995, in Austin. See
20 Tex. Reg. 4179 (1995). The comment period closed on February 9, 1995. Id. The following
groups and public officials expressed support for the proposed rules: one state senator; the Texas
Agricultural Extension Service; Texas Pork Producers Association; Texas Farm Bureau; Texas
Poultry Federation; Texas Cattle Feeders Association; Associated Milk Producers, Incorporated;
and Texas Association of Dairymen. Id. The following groups and public officials were in
general disagreement with the proposed rules: two state representatives; the Sierra Club; Cross
Timbers Concerned Citizens; Sabine River Authority; Brazos River Authority; Cities of Waco,
Clifton, Meridian, Cleburne, Dallas; and concerned citizens. Both the views and arguments of
the interested parties and the Commission's responses are memorialized in detail in the Texas
Register. Id. at 4719-27.
9. See also Beal, 39 Baylor L. Rev. at 668 ("the test of substantial compliance should not
allow an agency to 'fill in the blanks' with meaningless rhetoric and thereby frustrate the
legislative intent of reasoned decision making. The legislative intent undisputably requires a
focused analysis by the agency of all relevant factual, policy and legal issues resulting not only
in a justification, but a reasoned justification of the rule.").
10. We further note that the order does not even list the provision granting the Commission
the authority to issue permits-by-rule for air contaminant emissions, see Tex. Health & Safety
Code Ann. § 382.051(b)(3) (West Supp. 1999), nor does it provide any reasoning justifying why
that provision authorizes or requires the adoption of the CAFO rules
. 
11. The Commission also indicates in its brief that because the new rules require all CAFOs
to address air contaminants in a similar way, the Commission may regulate CAFOs by rule
pursuant to Health and Safety Code section 382.051(b)(3).
12. By holding that the Commission failed to provide a reasoned justification for the CAFO
rules, we do not suggest that the Commission cannot provide a reasoned justification. We merely
hold that it has not yet done so. See National Ass'n of Indep. Insurers v. Texas Dep't of Ins., 925
S.W.2d 667, 671 (Tex. 1996) ("NAII"). The Commission and the CAFOs request that we remand
the cause to the agency, even though this is not an action that originated there, to give it an
opportunity to do so. When we decide an appeal from a declaratory judgment based on the failure
of an agency to substantially comply with the reasoned justification requirement, however, we
render judgment only that the agency rule is invalid. See NAII, 925 S.W.2d at 670-71; Texas
Hosp. Ass'n v. Texas Workers' Compensation Comm'n, 911 S.W.2d 884, 888 (Tex. App.--Austin
1995, writ denied); Railroad Comm'n v. Arco Oil & Gas Co., 876 S.W.2d 473, 494 (Tex.
App.--Austin 1994, writ denied). We are aware that Tex. S.B. 382, 76th Leg., R.S. (1999),
signed by the governor on June 18, 1999, and effective as of September 1, 1999, amends the
requirements of section 2001.033 of the Administrative Procedure Act and adds a new section
providing that a court may remand a rule to an agency if the court finds that the agency has not
substantially complied with the procedural requirements for rule adoption. However, the bill also
states, "The change in law made by this Act applies to all rules adopted by a state agency on or
after January 1, 1998, except that the change in law made by this Act does not apply to a
challenge to a rule in a court action that is brought before September 1, 1999." Therefore, we
must decide the instant case based on the law as it existed prior to the adoption of S.B. 382.



ent remain in effect. See Act
of May 27, 1997, 75th Leg., R.S., ch. 1085, § 2(b), 1997 Tex. Gen. Laws 4178, 4179. 
7. Furthermore, at the time the trial court ruled upon the plea to the jurisdiction, neither
Texas Farm nor Paul Farms had yet intervened in the lawsuit.
8. A public hearing on the proposed rules was held on January 30, 1995, in Austin. See
20 Tex. Reg. 4179 (1995). The comment period closed on February 9, 1995. Id. The following
groups and public officials expressed support for the proposed rules: one state senator; the Texas
Agricultural Extension Service; Texas Pork Producers Association; Texas Farm Bureau; Texas
Poultry Federation; Texas Cattle Feeders Association; Associated Milk Producers, Incorporated;
and Texas Association of Dairymen. Id. The following groups and public officials were in
general disagreement with the proposed rules: two state representatives; the Sierra Club; Cross
Timbers Concerned Citizens; Sabine River Authority; Brazos River Authority; Cities of Waco,
Clifton, Meridian, Cleburne, Dallas; and concerned citizens. Both the views and arguments of
the interested parties and the Commission's responses are memorialized in detail in the Texas
Register. Id. at 4719-27.
9. See also Beal, 39 Baylor L. Rev. at 668 ("the test of substantial compliance should not
allow an agency to 'fill in the blanks' with meaningless rhetoric and thereby frustrate the
legislative intent of reasoned decision making. The legislative intent undisputably requires a
focused analysis by the agency of all relevant factual, policy and legal issues resulting not only
in a justification, but a reasoned justification of the rule.").
10. We further note that the order does not even list the provision granting the Commission
the authority to issue permits-by-rule for air contaminant emissions, see Tex. Health & Safety
Code Ann. § 382.051(b)(3) (West Supp. 1999), nor does it provide any reasoning justifying why
that provision authorizes or requires the adoption of the CAFO rules
. 
11. The Commission also indicates in its brief that because the new rules require all CAFOs
to address air contaminants in a similar way, the Commission may regulate CAFOs by rule
pursuant